## NALLEY v. NALLEY

[No. 200, September Term, 1968.]

*Decided April 9, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, SINGLEY and SMITH, JJ.

*Samuel Intrater* for appellant.

*Hal C. B. Clagett,* with whom were *Thomas A. Farrington* and *Sasscer, Clagett, Powers & Channing* and *Milton I. Baldinger* on the brief, for the appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, James A. Nalley, filed a caveat to the will of his deceased mother, Annie E. Nalley, dated September 29, 1964, and admitted to probate on March 14, 1967 by the Orphans' Court for Prince George's County, on the ground of undue influence, against his brother William L. Nalley who was named as executor of the will. The trial court (Mathias, J.) directed a verdict in favor of the caveatee, William, at the end of all the testimony. From the action of the jury pursuant to the trial court's direction, this appeal was timely taken.

Annie E. Nalley, the testatrix, and her husband, William J. Nalley, had four children, all sons: James A., the oldest son and caveator, Dewey (who died in infancy unmarried and without issue), Edwin J., who died on July 21, 1964 intestate, leaving a widow Evelyn Marie Nalley, but no children, and William L., the caveatee. The husband had operated a funeral home

at 522 Eighth Street, N.E., Washington, D.C., as a sole proprietorship prior to December 16, 1931, on which date he incorporated as "William J. Nalley Original Successor to Thomas R. Nalley & Son", but he continued to operate the funeral business as a sole proprietorship until his death on April 30, 1950.

By paragraph 8 of his will, probated on May 12, 1950, he bequeathed his "funeral business * * * to my wife Annie E. Nalley, for her natural life, and upon her death * * * to my three sons * * *." On June 3, 1950 Annie and the three sons, James, Edwin and William executed an agreement, under seal, whereby the three sons sold and assigned "all of their right title and interest whatsoever existing in the funeral business as referred to under aforesaid paragraph eight (8) to Annie E. Nalley, absolutely and in fee simple." James testified that he did not read the agreement but merely signed it because his mother asked him to do so and that he did not understand that by the agreement he was transferring his interest in his father's funeral business to his mother. William, on the other hand, testified that he knew, and believed all of the sons knew that "they were signing away their rights to share in that business" (the funeral business) after their mother's death. Any challenge to the agreement of June 3, 1950 is not before us in this case. It was stated at the argument that there was another unresolved proceeding involving these issues in the Circuit Court for Prince George's County.

On August 31, 1950, Articles of Incorporation of J. B. Beall, Incorporated were amended to change the corporate name to Nalley's Funeral Home, Inc., the stock of that corporation having been purchased in order to obtain a license to operate a funeral home.[1] Thereafter on July 12, 1955 a certificate to do business by Nalley's Funeral Home was filed in the District of Columbia.

The testimony indicated, without contradiction, that Annie was the dominant factor in the operation of the funeral home business. She was a strong-willed woman who made substantially all of the important decisions in the business. James

---

1. J. B. Beall, Incorporated had been incorporated on April 8, 1929 and Articles of Revival were dated March 13, 1950.

worked for a while in his father's funeral business, but disliked the funeral business intensely and ultimately went into the plumbing business. He testified that "I felt that it was a business that I was not inclined to take up and I didn't want anything to do with it. I was a plumber and I'd rather be a plumber than a mortician. I don't like fooling with the dead, I don't like being around dead bodies." He further testified:

"Q. Do you like to go to funerals? A. No, sir, I don't.

"Q. Did you go to your father's funeral? A. No. I didn't actually go to my father's funeral, nor my mother's, nor my wife's father and mother's, nor my two brothers-in-law that died. I don't like funerals.

"Q. Did your mother know this? A. My mother knew it. My mother loved me and she understood.

"Q. She understood you didn't like funerals? A. Yes."

James also stated that from 1950 to 1967 he never attended or participated in the conducting of any funerals at the Nalley Funeral Home.

Edwin and William, however, worked under the direction of their mother at the funeral home. Annie personally purchased the property at 3200 Rhode Island Avenue, Mt. Rainier, for $40,000 on February 10, 1958 and leased it to Nalley's Funeral Home, Inc. She transferred this property to the Nalley Family Trust on June 6, 1963.

On January 3, 1962, Annie transferred to Edwin and William 48 shares each of the 200 shares of Nalley's Funeral Home, Inc. stock, retaining for herself 104 shares, the controlling interest in the corporation. Edwin died intestate on July 21, 1964. Annie renounced all of her interest in Edwin's estate in favor of his widow Evelyn Marie, on September 29, 1964.

Also, on September 29, 1964, Annie executed the will challenged by the caveat in this case. By Item II she bequeathed James $8,000, with certain provisions for payment and by Item III she bequeathed all of her shares in Nalley's Funeral Home, Inc. to William. By Item IV she divided the residue of her estate in equal shares between James and William with certain

additional provisions if they predeceased her. William was named as executor to serve without bond. Annie directed that Milton I. Baldinger, her attorney, who was familiar with her affairs, be named as attorney for the executor. The will was prepared by Mr. Baldinger and William was not present when it was executed. There were three witnesses to the will.

Annie died on January 1, 1967 and, as indicated, the will was duly probated. There is no contention that at the time of the execution of the will, Annie was not mentally capable. On the contrary, James testified that his mother was a business-like, capable, intelligent woman, strong-willed but honorable and fair. She did the hiring and firing in the business and even made rather minute decisions as to whether or not a one-half inch or three-quarter inch pipe should go in the radiators. As James put it, his "mother was the business." James' daughter, Jean Ann Poerio, testified that Annie seemed fine to her and was alert when she visited her. Mary Feddon, who had known Annie for 36 years testified that Annie had a very, very good business mind, that no one could do anything without her permission and that Annie made all of the final decisions. The Reverend John F. Burns, pastor of St. James Roman Catholic Church in Mount Rainier, testified that he had known Annie for 13 years and up to the date of her death; that she had conducted some 40 funerals in the parish and her mental capacity was fine; that he had ministered to her in her last illness and even then her mental powers had not been impaired. When asked whether Annie was a person susceptible to being influenced by other people, Father Burns stated: "I think not."

James contends that sufficient evidence of undue influence was established by testimony that Annie's friend, confidante and former attorney, Mrs. Augusta Brown, did not like James and advised his mother not to leave him anything in her will, and further that on a few occasions William, as a result of some disagreement with his mother over details in operating the funeral business, stated that he was going to leave, thereby making his mother very nervous and upset. The fact is, however, that Mrs. Brown died in July 1962 more than two years *prior* to September 29, 1964 when Annie executed her will and more than three years prior to Annie's death. None of the evidence in

regard to William's occasional frustration with his mother's business decisions, indicated that it related in any way to the preparation of his mother's will or the disposition of her property.

The sole issue in the caveat proceeding was: "Was the paper writing filed in this Court and bearing the date of 29th of September, 1964 obtained, or was the execution thereof procured from Annie * * * deceased, by undue influence or duress or coercion of Augusta Brown or by any person or persons?" As we have indicated, the trial court directed the jury to answer this question "No", and in our opinion the trial court ruled correctly.

In *Shearer v. Healy,* 247 Md. 11, 230 A. 2d 101 (1967), the Maryland law in regard to the required proof to establish undue influence vitiating a will was stated in a quotation from the opinion by Judge (now Chief Judge) Hammond, for the Court, in *Stockslager v. Hartle,* 200 Md. 544, 547, 92 A. 2d 363-64 (1952), as follows:

> " '* * * [U]ndue influence which will avoid a will must be unlawful on account of the manner and motive of its exertion, and *must be exerted to such a degree as to amount to force or coercion,* so that free agency of the testator is destroyed. The proof must be satisfactory *that the will was obtained by this coercion* (although it need not be immediately exercised as of the date of the execution of the will if its influence causes its execution) or by importunities which could not be resisted, so that *the motive for the execution was tantamount to force or fear. Mere suspicion that a will has been procured by undue influence, or that a person had the "power unduly to overbear the will of the testator" is not enough.* It must appear that the power was *actually exercised,* and that *its exercise produced the will.* The *burden of proof is on the caveator to meet these requirements of the law.'* (Emphasis supplied.)" (247 Md. at 23, 230 A. 2d at 107.)

See also *Sachs v. Little,* 245 Md. 343, 226 A. 2d 283 (1967) and *Ingalls v. Trustees of Mt. Oak Methodist Church Cemetery,* 244 Md. 243, 223 A. 2d 778 (1966).

The proof in the present case indicates that Annie was a strong-willed, intelligent woman who was not susceptible to domination by anyone. She successfully operated the funeral business, had her own attorney, was not isolated from other people or from James, the caveator, or his family. On the contrary, a rather close relationship between James and his mother was described by him, whereby they either saw or talked to each other by telephone every day. Even if it be assumed *arguendo* that William had the power to unduly overbear the mother's will (the evidence indicates the contrary), there is no evidence whatever that he actually exercised such power in connection with the formulation and execution of the will. When James was asked "Did you ever hear Bud [William] make any statements to your mother about how she should leave the business?", he answered "No, sir." It is apparent that Mrs. Brown's hostility to James and her alleged influence over Annie had ceased with Mrs. Brown's death some two years prior to the execution of the will.

Nor do the provisions of the will, itself, indicate any unusual or unnatural distribution by the testatrix of her estate. James' testimony establishes his active and intense dislike of the funeral business. William, on the other hand, devoted his life to that business and contributed greatly to its success. Under these circumstances, it appears quite natural for Annie to leave money to James and the balance of her stock in the Nalley Funeral Home, Inc. to William.

James relies upon the decision of our predecessors in *Smeak v. Perry*, 175 Md. 73, 199 A. 788 (1938), in which there was evidence that a husband exerted substantial pressure on a wife, dying of tuberculosis, to execute a will which she had resisted doing prior to her terminal illness and that the wife had stated to a witness "Sign the G—— D—— thing, give him what he wants and let me die in peace." The facts in the present case are obviously quite different.

*Judgment affirmed, the costs to be paid by the appellant.*