582 A.2d 1237

**Charles Russell MOORE, Sr.**

v.

**Ronald S. SMITH**

No. 94, Sept. Term, 1989.

Court of Appeals of Maryland.

Dec. 24, 1990.

348

Thomas P. Bernier (Jeanette Lockhart Cole, Fowley, Beckley, Stevens & Cole, P.A., all on brief), Baltimore, for appellant.

Charles Bagley, IV (Donna G. McCabe, Council, Baradel, Kosmerl & Nolan, P.A., all on brief), Annapolis, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., ADKINS *, J. (retired), and CHARLES E. ORTH, Jr., J. (retired, specially assigned).

COLE, Judge.

In this case, involving testamentary law, we are asked to decide two issues: whether there was sufficient evidence to support a finding of undue influence and, if so, whether the circuit court erred in invalidating the testator's entire will instead of only that part which was the result of the undue influence.[1]

---

\* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of the Court; but did not participate in the decision and adoption of this opinion.

**1.** In his brief and at argument, Petitioner also challenged on sufficiency grounds the trial court's finding of fraud. Under the disposition

Andrew O. Koontz, the testator in this case, died on October 19, 1985, at the age of sixty-eight. In May 1987, a petition for probate was filed by the Petitioner, Charles Russell Moore, Sr., (Moore), in the Orphan's Court for Anne Arundel County. Thereafter, the Respondent, Reverend Ronald S. Smith (Smith), the testator's nephew and closest immediate relative, filed a petition to caveat. In May 1988, following a lengthy hearing, the Orphan's Court ruled that the will submitted by Moore was void because it had been procured by undue influence and fraud exerted by the Petitioner. Pursuant to Md.Code (1974, 1989 Repl.Vol.), § 12–502 of the Courts and Judicial Proceedings Article, Moore appealed to the Circuit Court for Anne Arundel County for a *de novo* hearing. We set forth the substance of the evidence produced at that hearing.

Andrew Koontz (testator or Koontz), owned and lived in a waterfront property located in Arnold, Maryland. For more than ten years, he shared this home with Grace Allen (Allen) who was the last of several women who had lived with Koontz and his housekeeper, Nada White, as part of an adult women's foster care program. After Ms. White's death, Allen remained as Koontz's sole ward. In 1980, the testator executed a will prepared by his attorney (Edward Monaghan) in which he left one half of his estate to his nephew, Smith. The testator devised the other half to Allen and directed that it be held in trust by Smith for Allen's benefit during her lifetime. He named his attorney as personal representative and Smith as alternate personal representative.

In 1983, the testator suffered a severe stroke which left him partially paralyzed, and physically dependent on others. The testator was also partially blind. The facts disclosed that the testator had always been dependent on those close to him to handle his financial affairs because he was unable to read or write, although he could sign his name. Allen

we make as to undue influence, we find it unnecessary to address the sufficiency of the evidence as to fraud.

had a history of mental illness [2] and alcoholism, and, therefore, was also incapable of handling either testator's or her own financial affairs. Furthermore, she was incapable of providing sufficient physical support to assist the testator in moving about the house. Consequently, in September 1984, the testator and Allen placed an advertisement in the newspaper seeking a live-in, male helper. Petitioner Moore responded to the advertisement and was hired. Moore's compensation for this job was $100 a month plus room and board. Because his duties did not require him to be home all day, Moore also held an outside job which paid approximately $7,000 per year. Within a month of being hired, Moore went to an attorney, Franklin M. Ward, whom he knew, and requested that he prepare wills for both the testator and Allen. Ward drafted the wills pursuant to Moore's instructions. Ward never met the testator or Allen, nor did he consult with them regarding the contents of their wills. Moore picked up the wills from Ward's office in November 1984 and took them home to be executed by Koontz and Allen. According to Moore, he read the testator's will to him before he signed it. Moore was a witness to each will and Koontz and Allen witnessed each other's will. Moore stored the wills in his room. Neither Koontz's nor Allen's family was advised of the execution of these wills at that time.

In addition to being named personal representative in both wills, Moore was also a contingent beneficiary. The relevant provision found in Koontz's two-page will reads as follows:

After the payment of all expenses of administration and other charges and obligations properly payable therefrom, I give, devise, bequeath and appoint all of my estate and property, real and personal, whether in possession, expectancy or remainder, including any property

---

**2.** According to medical documentation, Allen was diagnosed as Manic Depressive Reaction, Depressed and had been committed to Crownsville Hospital for treatment of this condition.

over which I may have power of appointment to Grace Elizabeth Allen, if she survives me; but if she does not survive me, then I give, devise, bequeath and appoint the same to Charles R. Moore, Sr.[3]

There was no mention of Koontz's nephew, Smith, in the testator's new will. Near the time these wills were executed, Smith underwent a series of life-threatening operations which prevented him from visiting the testator until two months before his death.

Approximately six months after the testator's death, Moore executed a deed in which he, purportedly as personal representative of the estate of Andrew O. Koontz, conveyed the testator's real property to Allen. Simultaneously, a second deed was executed in which Allen conveyed her fee simple interest in this property to herself and Moore as joint tenants. Over a year later, on May 27, 1987, Moore filed the petition for probate of Koontz's will. On that same date, the two deeds described above were recorded. Following the circuit court's affirmance of the ruling by the Orphan's Court invalidating the 1984 will, Moore appealed to the Court of Special Appeals. We issued a writ of certiorari before proceedings commenced in that court and shall affirm.

I

Moore argues that there was insufficient evidence to prove that he exerted undue influence over the testator within the one-month period preceding the execution of the new will. In response, Smith maintains that when con-

---

3. The provision in Ms. Allen's will contained slightly different wording, and provided:

After the payment of all expenses of administration and other charges and obligations properly payable therefrom, I give, bequeath, devise and appoint all of my estate and property, real and personal, whether in possession, expectancy or remainder, including the property, if any, over which I may have power of appointment to Andrew Ottaway Koontz, if he survives me; but if he does not survive me, then I give, bequeath, devise and appoint the same to Charles R. Moore, Sr.

sidered in its totality, the evidence sufficiently supported the court's findings.

 Generally, undue influence amounts to physical or moral coercion that forces a testator to follow another's judgment instead of his own. *Page On Wills* § 15.2 at 712 (1965). In *Nalley v. Nalley*, 253 Md. 197, 251 A.2d 849 (1969), we stated that

> undue influence which will avoid a will must be unlawful on account of the manner and motive of its exertion, and must be exerted to such a degree as to amount to force or coercion, so that free agency of the testator is destroyed.

253 Md. at 202, 251 A.2d 849, (*Quoting Stockslager v. Hartle*, 200 Md. 544, 547, 92 A.2d 363 (1952)). Although we have not laid down a test to determine the existence of undue influence with mathematical accuracy, we have recognized in many appellate cases several elements characteristic of its presence, including:

1. The benefactor and beneficiary are involved in a relationship of confidence and trust;
2. The will contains substantial benefit to the beneficiary;
3. The beneficiary caused or assisted in effecting execution of will;
4. There was an opportunity to exert influence;
5. The will contains an unnatural disposition;
6. The bequests constitute a change from a former will; and
7. The testator was highly susceptible to the undue influence.

*See Nalley*, 253 Md. at 202, 251 A.2d 849, *Shearer v. Healy*, 247 Md. 11, 23–25, 230 A.2d 101 (1967); *Arborgast v. MacMillan*, 221 Md. 516, 521, 158 A.2d 97 (1960); *Sellers v. Qualls*, 206 Md. 58, 70–71, 110 A.2d 73 (1954); *Stockslager supra*, 200 Md. at 547, 552, 92 A.2d 363 (1952); *Koppal v. Soules*, 189 Md. 346, 350–52, 56 A.2d 48 (1947); *Frush v. Green*, 86 Md. 494, 501–02, 39 A. 863 (1898); *Hiss v. Weik*,

78 Md. 439, 446–47, 28 A. 400 (1894); *Wall v. Heller,* 61 Md.App. 314, 330, 486 A.2d 764, *cert. denied,* 303 Md. 297, 493 A.2d 350 (1985); *Hess v. Frazier,* 27 Md.App. 150, 154–55, 340 A.2d 313, *cert. denied,* 276 Md. 745 (1975). These same elements have been enumerated by courts in other jurisdictions.[4]

■ We have also pointed out that proving the existence of undue influence may be more difficult when it is perpetrated upon an individual with cunning and craftiness. Consequently, notwithstanding the fact that direct testimony establishing the existence of undue influence is not presented, it still may be proved by circumstantial evidence. *Mills v. Glenn,* 152 Md. 464, 468, 136 A. 831 (1927).

■ In the instant case, the trial court made the following findings:

a) That Mr. Moore was actively involved in the preparation of a Will for Mr. Koontz approximately less than one month after beginning employment as his caretaker;

b) That Mr. Koontz could not read or write, except for signing his name;

c) That Mr. Koontz never personally consulted an attorney regarding the 1984 Will;

d) That Mr. Moore and Mrs. Allen, the two witnesses, were the sole beneficiaries under the Will;

e) That Mr. Moore prepared the Will and was largely benefited by it;

f) That the Will was executed in the seclusion of the Koontz home;

---

4. *See, e.g., Smith v. Crites,* 781 S.W.2d 189, 191 (Mo.App.1989); *Coppock v. Carlson,* 547 So.2d 946, 947 (Fla.App. 3 Dist.1989); *In re Estate of Opsahl,* 448 N.W.2d 96, 100 (Minn.App.1989); *Matter of Estate of Eubank,* 50 Wash.App. 611, 749 P.2d 691, 695 (1988); *In re Estate of West,* 522 A.2d 1256, 1264 (Del.Supr.1987); *Estate of Baker,* 182 Cal.Rptr. 550, 556, 131 Cal.App.3d 471 (1982) *Sheets v. Estate of Sheets,* 345 A.2d 493, 495 (Me.1975); *In re Gold's Estate,* 408 Pa. 41, 182 A.2d 707, 713 (1962); *In re Burrell,* 251 Iowa 185, 100 N.W.2d 177, 184 (1959).

g) That none of Mr. Koontz's friends or family were present at the signing of the Will, or were informed of the Will until after his death;

h) That six months after Mr. Koontz's death, Mrs. Allen executed a deed making Mr. Moore a joint tenant with Mrs. Allen of Mr. Koontz's property.

The lower court relied on *Mills, supra* and *Grove v. Spiker,* 72 Md. 300, 20 A. 144 (1890), as support for its conclusion that the will in the instant case was procured by undue influence. We now discuss these cases in turn.

In *Grove,* the testatrix, who was eighty-seven, illiterate, and feeble-minded, leased office space to the caveatee, Grove, who was a lawyer. After separating from his wife, Grove moved into the testatrix's home where he paid no rent. He also stopped paying rent for use of the office space. The testatrix later conveyed the office property to Grove, for which he paid nothing. This transaction was executed without the knowledge of the testatrix's business agent who had always handled all of the testatrix's business transactions. The testatrix's original will did not contain a bequest to Grove. In 1885, however, Grove drafted a codicil to this will which reduced a legacy of $1,000, made to the testatrix's sister-in-law, to $250 and bequeathed the remaining $750 to himself. This codicil was also executed without the business agent's knowledge. Thereafter, in 1886, Grove secretly drafted and had executed a completely new will which left Grove and his daughter approximately 80 percent of the testatrix's estate. Relying heavily on the clandestine circumstances through which the will was executed, the Court concluded that the exertion of undue influence by Grove was unmistakable. 72 Md. at 305, 20 A. 144.

In *Mills,* the testatrix, Kate Glenn, asked a couple, the Mills, to move in and assist in her daily care. Glenn's husband's job required him to be away from home for long periods of time and Glenn, seventy-one years old, illiterate, and crippled, was dependent upon the aid of others. The Mills received no compensation for their duties. Two

months after the Mills moved in, Glenn executed a will leaving the majority of her property to the couple. Glenn's husband was not informed of the will, which left him a legacy of only $25. The will was prepared by an attorney who met with Glenn; the Mills were not present at this meeting or when the will was executed. Two months after the will was executed, Glenn with Mr. Mills' guidance, then executed a deed conveying the house to the Mills. On the same day, the Mills executed a mortgage to secure a loan in order to make repairs on the property. As Glenn explained to one witness, the deed was executed in order to secure the loan for repairs and to repay the Mills for all they had done. Once again, Glenn's husband was not informed of these transactions. Following Glenn's death, the Mills informed Glenn's husband of the execution of the will and deed.

In support of its conclusion that the deed was procured by the Mills' undue influence and fraud, the court relied heavily on the circumstances surrounding execution of the will and subsequent deed noting:

It appears very unlikely that of her own free will she would dispose of [the home] without receiving any considerable part of its value, thus throwing herself and her husband in their old age, and in her extremity, upon the benevolence of others for a home, and, in part, for support.

\* \* \* \* \* \*

They were living in intimacy with her, and she was much dependent upon their care. They were in a favorable position for obtaining an unfair advantage, if they desired, and if it could be done.

152 Md. at 469, 136 A. 831. The Court also found the reasons upon which Glenn conveyed the property (to secure a loan for repairs and to repay the Mills) to be unconvincing; it concluded (1) that the loan could have been secured without execution of the deed, and (2) that the testatrix had already sought to "repay" the Mills through execution of her will. *Id.* at 470, 136 A. 831. Consequently, the deed was set aside.

Having reviewed the record in the instant case, we cannot say that the trial court's findings were clearly erroneous or insufficient to support the conclusion that there was undue influence in the procurement of the 1984 will. We explain.

a.

*Susceptibility of testator, Confidential relationship and opportunity to exert undue influence*

The evidence seems to suggest that in 1980, Koontz enjoyed reasonably good health. Although dependent upon others to handle his financial and business transactions due to his inability to read and write, Koontz was otherwise functionally independent and personally attended to his daily needs as well as those of his ward, Allen. Koontz also demonstrated his ability to manage his affairs by consulting with a lawyer and instructing him to set up a trust for Allen to insure that she was cared for after his demise. Overall, the testator, through his actions, indicated an awareness of his circumstances and limitation.

Following his stroke in 1983, Koontz's circumstances changed dramatically. He was partially paralyzed, virtually immobile, and partially blind. Consequently, Koontz's dependence upon others increased significantly as he then needed assistance in washing and dressing himself, in preparing his meals, and in moving about the house. Allen was physically incapable of lifting or moving Koontz. Moreover, Allen was incapable of assuming full responsibility of the household chores. Due to her medical-related problems and short term memory loss, she required constant supervision. These circumstances compounded the limitations resulting from Koontz's illiteracy and made it imperative that he get help, for which Koontz subsequently advertised. In sum, Koontz's situation created a perfect setting over which someone could take advantage. Moore, recently divorced and discharged in bankruptcy, applied for this job and was hired.

It appears that the stage was set for Moore not only to satisfy the requirements of his employment, but also to

take the extra step to ingratiate himself with Koontz. Moore assumed responsibility for tasks Koontz was no longer able to handle alone. In light of the intimate nature of Koontz's physical limitations and reliance on Moore to attend his personal and physical needs, as well as Koontz's financial affairs, the development of a confidential relationship was inevitable. It was through these circumstances that Moore contrived to do whatever was necessary to coerce Koontz into undoing what he had rationally done in his 1980 will.

b.

*Change from former will and unnatural disposition*

Allen was the primary devisee in the testator's 1984 will and Koontz was the primary devisee in Allen's will. Moore was a contingent beneficiary under both wills. Conversely, in the testator's 1980 will, one half of his estate was bequeathed to Smith, his nephew; and the other half of the estate was bequeathed to Allen, in trust, for her lifetime. Moore maintains that the fact that the testator changed the bequests in his 1984 will is not *per se* indicative of the exertion of undue influence. What Moore fails to consider, however, are the inferences to be drawn from this and other facts which support the trial court's conclusions. While the testator's intent to care for Allen has never been questioned, the evidence reveals that the testator expressed doubt as to Allen's ability to care for herself. Thus, it is not likely that, having bequeathed one half of his estate to Allen in trust in his 1980 will, the testator would then bestow upon Allen his entire estate in total disregard of her limitations. This result completely belies the intent manifested in Koontz's 1980 will. Neither is it likely that, absent Moore's importunity or coercion, the testator would have named someone whom he knew less than a month as his personal representative and a contingent beneficiary. Those who had handled the testator's personal and financial affairs in the past were long-term acquaintances. These

people included testator's ex-wife, his brother-in-law, and a close childhood friend of Allen's.

Moreover, we disagree with Moore's contention that the lower court failed to consider the significance of Smith's failing physical health. Moore maintains that the testator may have changed his will in case Smith died before he did, which obviously would have prevented Smith from serving as trustee pursuant to the will. Even if true, this does not explain why the testator would have seen a need to change the personal representative as well. More important, Smith's inability to assume the role of trustee does not sufficiently explain why the testator would devise his entire estate to Allen outright, absent the concomitant appointment of a trustee to oversee Allen's use of this legacy. The circuit court obviously concluded that Moore intentionally placed himself in a position to control the assets of the estate.

c.

### Beneficiary caused or assisted in causing execution of new will

Like the Court in *Grove* and *Mills*, the trial court took into consideration the circumstances surrounding execution of the wills. Within a month from the time he was hired (October 1984), Moore went to see an attorney and requested that he prepare wills for Koontz and Allen. The evidence reveals that Koontz and Allen both had visitors, family and friends, on a regular basis, any of whom could have witnessed the execution of these wills. Still, despite Koontz's illiteracy and Allen's short-term memory lapses, Moore had Allen and Koontz attest each other's will. The trial court could reasonably infer from this fact that Moore was bent upon hiding the existence of the wills. Moore never advised the testator's family or friends of the new will until after the testator's death.

d.

*Substantial benefit to beneficiary*

The record is replete with evidence which supports the circuit court's finding that Moore was largely benefited by Koontz's will. The benefits to be received by Moore, albeit not immediate, were both substantial and inevitable. Upon testator's death, his estate automatically passed to Allen and Moore's contingent interest under that will vanished. Because he was also a contingent beneficiary under Allen's will, however, his interest under that will then became vested, subject only to the possibility, however remote, that Allen would change her mind and make a new will naming a different beneficiary. In order to avoid this uncertainty, Moore then drafted two deeds. Under the first deed, Moore as personal representative of testator's estate purportedly conveyed the real property to Allen. This conveyance was made notwithstanding the fact that the testator's will had not been admitted to probate. Consequently, Moore had not been granted letters of administration and did not have the authority to convey the testator's property.[5] Moore manipulated Allen to execute the joint tenancy deed with the intention of preventing her from dispossessing herself and thereby thwarting his scheme to possess the entire Koontz estate. Clearly, Moore's intent was to become the sole beneficiary under Allen's will, survivor under the deed, *See, Young v. Young,* 37 Md.App. 211, 217, 376 A.2d 1151, *cert. denied,* 281 Md. 746 (1977), and thereby acquire fee simple ownership of this real property.

While the quantum of proof necessary to establish undue influence varies according to the susceptibility of the testator, *Sellers, supra,* 206 Md. at 70, 110 A.2d 73, here the evidence is abundant so as to manifest the existence of all seven elements. Accordingly, we believe the trial court was correct in concluding that Moore had coerced Koontz to execute the 1984 will.

---

**5.** *See* Maryland Code (1974) § 6–105 of the Estates and Trusts Article.

## II

Moore next contends that because the trial court's finding of undue influence applied only to him, the trial court erred in invalidating the balance of the will which included the bequest to Allen. Moore contends that, instead of voiding the entire will, the trial court needed only to invalidate that portion of the will which benefited him. In this way, he continues, the testator's intent to provide for Allen following his death could have been realized.

Smith, on the other hand, maintains that invalidation of the entire will was essential. Smith reasons that Moore's goal, in unduly influencing Koontz, was to obtain his property. The bequest to Allen was the means to that end. Therefore, partial invalidation of the will was not an option.

■■■ The general rule, recognized in Maryland, is that undue influence which deprives a testator of his free agency is sufficient to invalidate a will, not only in relation to the person who unduly influenced the testator, but also as to all others who are so intended to be benefited by the undue influence. *Davis v. Calvert,* 5 G & J 269, 302 (1833); *Grove, supra,* 72 Md. at 307, 20 A. 144; *Sellers, supra,* 206 Md. at 71, 110 A.2d at 80; *accord Matter of Estate of Jones,* 370 N.W.2d 201, 203–04 (S.D.1985). As to partial invalidation of a will, we stated in *Goertz v. McNally,* 185 Md. 170, 175, 44 A.2d 446 (1945), that where a part of a testamentary instrument is shown to have been the result of undue influence, other portions of the will may still be given effect, if they can be separated from the invalid parts leaving intact an intelligible instrument.

■■■ The primary bequest in the 1984 will left the entire estate to Allen, if she survived the testator. In the event she did not survive him, the estate was to go to Moore as the contingent beneficiary. Because Allen did survive Koontz, it would appear on the surface that Moore's undue influence did not defeat Koontz's donative intent. In his 1980 will, Koontz, mindful of Allen's infirmities sought to insure his provision for Allen by leaving Allen one half of

his estate to her in trust for life. In the 1984 will, however, he bequeathed his entire fee simple estate to Allen outright. Once this property passed to Allen, the provision in Allen's will devising all of this property to Moore then became effective. We agree with the trial court that this second provision is not consistent with the 1980 intent. We have already concluded that the trial court properly ruled that this result never would have occurred but for Moore's undue influence. Therefore, we may abbreviate our explanation as to why invalidation of the entire will was proper in this case.

As the trial court's memorandum opinion and order make clear, Moore's scheme to obtain Koontz's property was only to be realized through Koontz's unconditional devise to Allen. Thus, Moore had to make access to Koontz's property feasible. By coercing the testator to change the bequest to Allen of the life estate in trust in the 1980 will to the bequest of the entire fee simple estate in the 1984 will, Moore made this goal foreseeable. As the sole beneficiary under Allen's will, Moore would acquire everything Koontz had originally devised to Allen. As a safeguard against any act by Allen throwing his scheme out of sync, Moore had Allen execute a deed in which she conveyed the property to herself and Moore as joint tenants. Upon execution of that deed, Moore sealed his right, albeit invalid, to ownership of Koontz's property.

It is clear that Moore intended for Allen to serve as the conduit through which he ultimately benefited. Therefore, had the trial court invalidated only the clause in Koontz's 1984 will making Moore a beneficiary, and upheld the bequest to Allen, the taint of Moore's actions would have remained. The only way to ensure that Moore did not benefit from his actions was to invalidate the entire will. By doing so, the 1980 will was revived, and the testator's true donative intent was effected.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.