**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EMILY R. SAMPLE; KEVIN B. SAMPLE,
Plaintiffs-Appellees,

and

OCCIDENTAL LIFE INSURANCE
COMPANY OF NORTH AMERICA;
METROPOLITAN LIFE INSURANCE                    No. 96-1547
COMPANY,
Plaintiffs,

v.

OLA J. FLEMING,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge; Jillyn K. Schulze,
Magistrate Judge.
(CA-95-304-DKC)

Argued: January 31, 1997

Decided: September 15, 1997

Before HALL and ERVIN, Circuit Judges, and CLARKE,
Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David A. Branch, Washington, D.C., for Appellant. Griffin Vann Canada, Jr., MILES & STOCKBRIDGE, Rockville, Maryland, for Appellees. **ON BRIEF:** Michael S. Rosier, ROSIER & WRIGHT, Oxon Hill, Maryland, for Appellant. J. Stephen McAuliffe, MILES & STOCKBRIDGE, Rockville, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is an interpleader action originally brought in district court by Occidental Life Insurance Company of North Carolina (OLIC) against Emily and Kevin Sample and Ola J. Fleming. Metropolitan Life Insurance Company (MLIC) of New York was permitted to intervene as a co-plaintiff and file a Complaint for Interpleader. The actions were initiated by both insurance companies in order to avoid multiple liability for life insurance policies issued to Brenda Handy. The Samples and Fleming both claim to be the sole beneficiaries of these policies. The companies paid the insurance proceeds into the registry of the district court pending the resolution of this case.

The district court realigned the parties for purposes of judicial proceedings, designating the Samples as plaintiffs and Fleming as the defendant, and allowed discovery. The case was referred to a magistrate judge by consent of the parties, and the magistrate judge granted the Samples' motion for summary judgment. The insurance proceeds were ordered to be paid to the Samples. Pursuant to 28 U.S.C. § 636(c) Fleming appeals to us directly from the judgment of the magistrate. She claims that the magistrate judge erred by (1) finding that Handy was not subject to undue influence and (2) finding that Handy was competent to change the beneficiaries of her life insurance

2

policies from Fleming to the Samples. For the reasons hereinafter explored, we affirm the lower court's grant of summary judgment in favor of the Samples.

I.

We review grants of summary judgment de novo, applying the same standard used by the lower court itself. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir. 1991); Shealy v. Winston, 929 F.2d 1009 (4th Cir. 1991); Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir. 1988). "[T]he non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Conkwright, 933 F.2d at 233. See also E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). However, "[the opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.), cert. denied, 513 U.S. 813 (1994) (internal citations omitted).

II.

Handy died in a Towson, Maryland, nursing home on December 4, 1994. At the time of her death, she was insured under two life insurance policies: the OLIC policy paid a benefit of $101,000, and the MLIC policy had a value of $46,000.

Handy was initially hospitalized in September 1994 due to complications related to the AIDS virus. While a patient at a Washington, D.C., area hospital, Handy was advised that she had only 24 to 48 hours to live. Upon learning of this grave prognosis, Fleming, Handy's sister, traveled to Washington from her home in Florida.

During her stay, Fleming signed the papers necessary to become a beneficiary under Handy's will and to exercise power of attorney over Handy. Fleming also became acquainted with the Samples, who had maintained a cordial relationship with Handy for some period.

3

During a search of Handy's apartment, Fleming discovered the OLIC policy, paid the back premiums on that policy, collected some of Handy's clothes and jewelry, and visited Handy while wearing Handy's sweater. Handy did not die as quickly as the doctors had predicted and, after six days, Fleming returned to Florida with the clothes and jewelry. Subsequent to Fleming's departure, Ms. Sample informed Handy that Fleming had taken the clothes and jewelry. Fleming contends that Emily Sample urged her to take the belongings in order to prepare for Handy's funeral. According to Fleming, she did not tell her dying sister the real reason for taking the items for fear of upsetting her. Handy became angry with Fleming because Handy believed that she had been treated badly by her sister, because Fleming had taken the clothes and jewelry from Handy's home, and because Fleming had worn Handy's sweater.

Prior to October 1994, Fleming had been designated as the primary beneficiary under both the OLIC and the MLIC policies. By an undated Designation of Beneficiary filed with Handy's employer on October 3, 1994, Handy changed her beneficiary under the MLIC policy, naming the Samples as the parties eligible to collect. Handy also instructed her attorney, Sheryl Fletcher, to prepare a Change of Beneficiary form to effectuate Handy's wish to change the primary beneficiary under her OLIC policy from Fleming to the Samples.

Fletcher states in her affidavit that she and Handy always met in private, that Handy "was alert; responded intelligently to my questions; and, had very little difficulty in conveying her thoughts to me," and that Handy "appeared to fully understand the consequences of her act in changing the beneficiary." Suppl. App. at 21. Further, Fletcher noted that "Ms. Handy's instructions to me were clear, concise and definite." Id. at 22. Because Handy expressed her fear that Fleming might challenge her competency, Fletcher suggested that Handy obtain a psychiatric evaluation. Dr. Lex Smith, a psychiatrist, interviewed Handy and concluded the following: "I can not make a diagnosis of mental disease on this patient. She is capable of making a will and says that she is satisfied with the recent will she made which removes the sister as one to inherit from her." J.A. at 30.

In addition to Fletcher's statement, the following people submitted affidavits in support of the Samples' motion for summary judgment:

4

Leslie Hammond, Handy's nurse at the nursing home; Charles Boone, Handy's last love interest; Sarita Harris, Handy's close friend; and Catherine Knustgraichen, a secretary at the nursing home. The statements of Hammond, Boone, and Harris reveal Handy's frustration with Fleming for taking Handy's belongings to Florida and for wearing Handy's sweater. These three affidavits also included statements attesting to Handy's mental competence to make changes to her life insurance policies. Hammond and Boone noted the Samples' frequent visits with Handy and Handy's fondness for the Samples. Knustgraichen was the notary who witnessed Handy's signature on the Request for Change of Beneficiary that was sent to OLIC.

Kevin Sample exercised power of attorney over Handy in her final days, assisted her in obtaining the services of Fletcher, and aided and witnessed Handy's change of beneficiary for the MLIC policy.

III.

A.

The determination of whether undue influence was present in the instant case is governed by Maryland law. Maryland courts recognize seven elements characteristic of undue influence in the making or changing of wills and related documents:

> 1. The benefactor and beneficiary are involved in a relationship of confidence and trust;
>
> 2. The will contains substantial benefit to the beneficiary;
>
> 3. The beneficiary caused or assisted in effecting execution of will;
>
> 4. There was an opportunity to exert influence;
>
> 5. The will contains an unnatural disposition;
>
> 6. The bequests constitute a change from a former will; and

5

> 7. The testator was highly susceptible to the undue influence.

Moore v. Smith, 582 A.2d 1237, 1239 (Md. 1990) (emphasis added). The magistrate judge properly applied these factors in her analysis of undue influence over one listing a life insurance beneficiary. In concluding that Fleming did not raise a genuine issue of fact regarding undue influence, the lower court also pointed out, and we reiterate, that the burden of showing undue influence is on the party seeking to set aside a testamentary transaction. Leimbach v. Allen, 976 F.2d 912, 917 (4th Cir. 1992) (applying Maryland law), cert. denied, 507 U.S. 935 (1993).

Fleming focuses her attention only on two of the seven characteristics enunciated in Moore: (1) whether the policy "contains an unnatural disposition"; and (2) whether the insured"was highly susceptible to undue influence." Moore, 582 A.2d at 1239.

With regard to Handy's disposition being "unnatural," Fleming implies that she is the only natural beneficiary of the policy because she is Handy's sister. This assertion is not supported by Maryland law: "If a testator is competent and is exercising his own free agency, he may leave his property to whom he pleases, and the fact that the disposition is not to a member of the family does not make it an unjust disposition." Stocklager v. Hartle, 92 A.2d 363, 366 (Md. 1952). The court below concluded that Handy's decision to name the Samples as beneficiaries was not unnatural when one considers the following facts: the Samples visited Handy regularly; the three had a relationship of confidence and trust; the Samples treated Handy like family; Handy, while fully competent in the opinion of a psychiatrist, stated that she was angry with Fleming and wanted to disinherit her; and Handy had little other family, both parents being dead and her brother being in prison. See Sample v. Fleming , No. DKC-95-304, slip op. at 21 (D. Md. Mar. 15, 1996). As the court concluded, "[o]nce she decided to remove Ms. Fleming as beneficiary, it was quite natural for her to designate her close friends and caregivers," the Samples. Id.

Fleming next attempts to convince us that Handy meets the Moore criterion of being "highly susceptible to undue influence." However,

6

mere suspicion of susceptibility to undue influence is not enough to overcome summary judgment; rather, some evidence must indicate that one has been coerced and thereby forced to follow the judgment of another. See Moore, 582 A.2d at 1240; Anderson v. Meadowcroft, 661 A.2d 726, 731-32 (Md. 1995); Stockslager, 92 A.2d at 363-64.

Fleming offers no evidence of undue influence other than her own statements. She claims that Emily Sample made false statements to Handy about Fleming taking some of Handy's clothes and jewelry to Florida.[1] In fact, Fleming admits in her affidavit that she did take Handy's clothes in preparation for the impending funeral, and Handy's jewelry "for sentimental reasons and at Mrs. Sample's suggestion." J.A. at 59. Further, after taking the items to Florida, Fleming talked on the telephone with Handy and had full opportunity to explain her reasons for taking them and her claim that she had done so at Emily Sample's urging. Handy, nevertheless, remained angry over her sister's behavior.

Fleming's evidence of Emily Sample's false statements is even less likely to prove that Handy was "highly susceptible to undue influence" when viewed in light of the observations of those who were around Handy in her final days. Handy's attorney, psychiatrist, nurse, friend, and love interest all believed she acted of her own will when she changed the beneficiaries of her policies. Also, Smith, Fletcher, and Hammond all recall Handy's statements about Fleming treating her poorly.

Maryland courts recognize a high susceptibility to undue influence where one's mental state has deteriorated or where one is highly dependent on the beneficiary to meet vital physical needs. Cf. Anderson, 661 A.2d at 731-32 (concluding that plaintiff did not allege "facts sufficient to establish the decedent's high susceptibility to undue influence" because she did not allege that the decedent's mental ability had deteriorated, that force or fear had been used to coerce

_____

[1] Fleming does not contend that undue influence was exerted when Kevin Sample contacted Fletcher on Handy's behalf (Handy and Fletcher met alone to discuss changing the OLIC policy), or when Kevin Sample aided Handy in changing the MLIC policy. Rather, Fleming focuses on Emily Sample's alleged false statements as creating the undue influence.

7

the decedent, or that the decedent had been "especially dependent on [the defendant] to meet his physical needs.").

In the instant case, Fleming has failed to allege facts necessary to raise an issue as to Handy's mental state or any dependency on the Samples for her "vital physical needs."[2] Consequently, Fleming fails to reveal circumstances sufficient to have made Handy highly susceptible to undue influence. Cf. Leimbach v. Allen , 976 F.2d at 914-15, 919 (finding undue influence where the testator was totally isolated from the "outside world" by his mistress and the mistress assisted the testator in removing his former wife as beneficiary under two life insurance policies and inserting herself as sole beneficiary); Mills v. Glenn, 136 A. 831 (Md. 1927) (finding undue influence where the Mills couple moved in with an elderly, illiterate, and crippled woman, who became dependent on the couple for her physical needs, and who executed a deed conveying her house to the Mills); and Grove v. Spiker, 20 A. 144 (Md. 1890) (finding undue influence where an attorney moved into the home of an eighty-seven-year-old illiterate and feeble-minded woman, and the attorney secretly drafted and had executed a completely new will for the testatrix, naming himself as a primary beneficiary).

In contrast to the facts of Leimbach, Mills, and Grove, the record in the instant case does not indicate that Handy was mentally infirm, that she was physically dependent on the Samples, that she was isolated by the Samples, or that the policy beneficiaries were changed without her knowledge.[3]

We have previously concluded that the burden of showing undue

_____

[2] Handy spent the months of her declining health either in a hospital or in a nursing home. She was dependent on the services of those institutions, not the Samples, to meet her physical needs.

[3] The Maryland Court of Appeals has listed as a factor in its determination of undue influence "the absence of independent advice from disinterested sources or a reasonable opportunity to secure it." Tracey v. Tracey, 153 A. 80, 84-86 (Md. 1931). Handy discussed with her attorney in private her decision to change her policies. Further, Handy was not isolated; rather, she discussed freely with her friends, a psychiatrist, and an attorney, the reasons for changing the policies' beneficiaries.

influence rests with the party seeking to set a transaction aside. Leimbach, 976 F.2d at 917. The lower court found that Fleming only made "conclusory allegations," without sufficient supporting facts to state a cause of action for undue influence. Sample, slip op. at 20. Fleming simply did not produce evidence sufficient to sustain her burden of showing that Emily Handy's actions were the product of undue influence.

B.

Maryland law establishes that "the degree of mental capacity necessary to change the beneficiary in a life insurance policy is the same as that necessary to execute a will or a valid deed or contract." Lynn v. Magness, 62 A.2d 604, 608 (Md. 1948) (citations omitted). Every person is initially presumed to have sufficient mental capacity to make a valid will or contract, and one challenging a person's capacity must overcome this presumption by showing that the person was of unsound mind at the time the will or contract was made. Id. at 607; Wall v. Heller, 486 A.2d 764, 770 (Md. Ct. Spec. App.), cert. denied, 493 A.2d 350 (Md. 1985).

In addition to the affidavits of Handy's attorney, nurse, close friend, and love interest, an affidavit by Smith, the psychiatrist, indicates his belief in Handy's competence after having conducting a psychiatric consultation with Handy. Smith observed that Handy was "oriented to time, place, and person . . . [and] capable of making a will." Fleming implies that Handy's mental state deteriorated during her period of declining health; therefore, it is significant that Smith conducted this consultation approximately one month after Handy delivered the change of beneficiary form to OLIC's agent.[4]

Fleming points out several of Handy's incorrect answers from the psychiatric consultation that appear to Fleming to reveal Handy's deteriorated mental state. These mistakes about certain details, such as Fleming's state of residence, their father's age at death, Handy's

_____

[4] As indicated above, OLIC was dismissed from the action and discharged of any liability under its policy. Fleming, however, makes the same arguments as to Handy's incompetence regarding her change of beneficiaries under both the OLIC and MLIC policies.

9

grade level when she dropped out of school, and even Handy's statement that she had an older sister when she had none, do not raise a genuine issue as to Handy's competence when viewed in light of Handy's overall performance during the consultation. In the opinion of Smith, as a result of numerous other tests of Handy's mental competence, Handy was of sound enough mind to make a will and thereby of sound enough mind to change the beneficiaries of her policies.

Fleming contends that she was "denied an opportunity to question the doctor at trial on an issue of material fact, the doctor's credibility." The Samples properly point out that the court below offered the parties ample opportunity for discovery in this case. Further, Fleming offered no evidence to contradict Smith's conclusion as to Handy's competence other than Handy's answers given during the consultation and Fleming's own belief in her sister's incompetence.

Fleming also argues that Handy's actions were the result of an "insane delusion." She cites Benjamin v. Woodring, 303 A.2d 779, 784 (Md. 1973), as defining an insane delusion as "a belief in things impossible . . . [or] so improbable under the surrounding circumstances that no man of sound mind could give them credence[,] . . . [or] a false belief, for which there is no reasonable foundation." While Fleming may think her sister overreacted to the taking of the clothes and jewelry and the wearing of the sweater, Handy was not operating under a false belief; Fleming did take the items and wear, perhaps even stretch--as was Handy's concern--Handy's sweater. Also, even if Fleming took the items at Emily Sample's urging, this does not make Handy's understanding of the act false. As noted above, Fleming could have explained any misunderstandings which Emily Sample may have created when Fleming spoke to her sister by phone shortly after Fleming returned to Florida with the clothes and jewelry. Fleming's mere speculation as to her sister's incompetence is not sufficient to overcome the law's presumption of sanity, and therefore does not allow Fleming to survive summary judgment on the issue of competence.

Finally, in addition to the several statements specifically attesting to Handy's mental competence, we note that Handy told her friends, her attorney, and her psychiatrist exactly why she was removing Fleming as policy beneficiary, and that Handy went to considerable

10

trouble in planning just how she would defeat the foreseen attack on her competence by Fleming. Handy's explanation for changing her policies never varied and her actions were deliberate.

When Fleming's assertions are considered along with the affidavits of those attesting to Handy's mental competency, Fleming has failed to rebut the presumption that Handy possessed sufficient mental capacity to change her policies.

IV.

Fleming has not alleged facts sufficient to raise a genuine issue of material fact regarding whether the Samples exercised undue influence over Handy or whether Handy was mentally competent to change the beneficiaries of her insurance policies. Therefore, the decision of the court below should be

AFFIRMED.

11