ANDERSON ET UX. *v.* HULL ET UX.

[No. 109, September Term, 1957.]

*Decided February 25, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Elmer O. Anderson, pro se,* for the appellants.

*D. Eugene Walsh,* with whom were *Charles O. Fisher* and *Walsh & Fisher* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case comes to us in a thoroughly confused state, due in no small measure, we believe, to the fact that the appellants (defendants in the trial court) have undertaken to represent themselves in this litigation.

The appellants make two contentions in their brief: one that they were denied due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States; the other, that the trial court erred in entering judgment by default against them. We find it necessary to consider only the second contention.

On February 3, 1956, the plaintiffs (now appellees), Ralph E. D. Hull and Belva A. C. Hull, his wife, docketed a suit in the Circuit Court for Carroll County against the defendants (now appellants), Elmer O. Anderson and Dorothy D. Anderson, his wife, on a confessed judgment note. The Clerk, acting under Rule 1 of the General Rules of Practice and Procedure, Part Three, II, Judgments by Confession, then in force (now Rule 645 of the Maryland Rules, effective January 1, 1957), entered judgment by confession in favor of the plaintiffs and against the defendants for the sum of $6,455.73, plus interest from the date of judgment, court costs and 10% as attorneys' fees for collection, and issued summons for the defendants which was served on the defendants on October 4, 1956. The defendants, acting within the time allowed for moving to strike out the judgment, filed a document entitled "Defendants' Plea", which was in the form of a letter dated November 5, 1956, addressed to the Chief Judge of the Circuit Court. It was accompanied by two enclosures referred to below. There was a hearing on the matter on December 3, 1956. The Judge took the matter under consideration and filed an opinion and order in the matter on January 29, 1957. The opinion pointed out that when the suit was filed only two instalments aggregating

$2,500 in principal amount were due on the note out of a total balance of $6,250 (in principal amount) remaining unpaid on the original principal amount of $15,000. The note was dated May 5, 1954, and provided for quarterly payments of $1,250 each, with interest at 5%. There was no provision for acceleration of the balance on non-payment of any instalment when due.

One of the two enclosures submitted with the "Defendants' Plea" was a copy of a notice published (apparently as a paid advertisement) by Mr. and Mrs. Anderson in the October 18, 1956, issue of a Westminster newspaper, as President and Vice President, respectively, of Anderson Chrysler, Incorporated. This notice stated their intention to liquidate the business of that corporation, to apply the proceeds to the payment of its obligations and to assume personally the payment of any corporate liabilities not paid out of the corporate assets. The other enclosure was a printed copy of a proposed open letter which the defendants had submitted for publication as a paid advertisement in two Westminster newspapers, which these papers were said to have refused to accept for publication "because of its legal connotations."

It would be of no use to summarize the whole of the "open letter", which purports to review a long controversy. It indicates, among other things, that in 1953 Mr. Anderson bought out the interest of a Mr. Kemper in a partnership which had existed for some years between Mr. Kemper and Mr. Hull in an automobile dealership business, that the business had been incorporated when Anderson bought Kemper's interest, that Messrs. Hull and Anderson had become officers and stockholders of the corporation, that they soon came to the parting of the ways and that Anderson then undertook to buy out Hull's interest in the business, that the note here involved represented a part of the purchase price, that Hull entered into some sort of covenant not to compete (whether with the Andersons, the corporation or both was not clear), and that Anderson claimed that Hull had violated this agreement.

The trial Judge ordered the judgment by confession to be stricken out, but preserved its lien, and granted leave to the

defendants to plead within fifteen days (from January 29, 1957).

Under date of February 12, 1957, the Andersons wrote a letter to the Judge in which they said that they had understood that there would be a further hearing at which they would be allowed to present their case, but that they construed his decision of January 29th as meaning that a judgment had been entered against them. They also challenged the note—apparently on the ground that the plaintiffs had violated the agreement pursuant to which the note was executed and they asserted that the plaintiffs' violation of the agreement had caused irreparable damage to them and "to the corporations (Hull and Anderson, Inc. and Anderson Chrysler, Incorporated)" and asked that the judgment · for the plaintiffs against them be set aside and damages of $50,000 be awarded them. The respective interests of the Andersons and of the named corporations were not made clear. The Judge replied to this letter on February 13, 1957, pointing out that he had stricken out the judgment, but had retained the lien, and had allowed the defendants fifteen days in which to file pleas. He further informed them that, assuming that proper pleas would be filed, the case was set for March 13, 1957, at 10 A. M. He closed with this advice: "As pleading at law is highly technical, I would suggest that you immediately engage an attorney to prepare your pleas."

The appellants did not heed this wise advice. The record does not show any hearing on March 13th, but it does show that on March 18th, 1957, which was much more than fifteen days after the order of January 29th, the defendants filed a number of interrogatories directed to Hull and G. T. Zepp, Sr., and G. T. Zepp, Jr., doing business as the Arcadia Garage, and that Hull filed answers to most of these interrogatories on March 28, 1957. Among other things shown by these interrogatories and answers are the facts that Hull had been employed by the Arcadia Garage since November 8, 1954, and that he had talked with two residents of Carroll County about the purchase of a new or used car from the Arcadia Garage. The exact location of the Arcadia Garage is not

shown but it appears to be only a few miles from Westminster, where Anderson had his place of business.

The last instalment of principal on the note fell due, according to its terms on May 5, 1957, which happened to be a Sunday, so that the due date was actually Monday, May 6th. The docket entries for that date show the plaintiffs' motion (presumably oral) for judgment by default for want of a plea, the filing of the defendants' answer to the motion, that a hearing was had, that the answer was overruled, and that judgment by default for want of a plea was entered. This was followed on May 9th by an order of court extending "on proof" the judgment by default previously entered, in the amount of $6,643.23, plus interest from the date of judgment, costs and a counsel fee of 10% on principal and interest. On June 3rd the defendants filed a motion to vacate the judgment and also filed pleas. The plaintiffs made a motion *ne recipiatur* (apparently oral) on the same day, and still on the same day, that motion was granted and the defendants' petition was dismissed.

The answer of the defendants filed on May 6, 1957, to the plaintiffs' motion of the same date for a judgment by default for want of a plea, is a lengthy document in which they quoted parts of the agreement of April 22, 1954, between the plaintiffs, the defendants and Hull and Anderson, Inc., relating to the purchase of the business by the Andersons. Among the quoted portions is the covenant not to compete which Hull entered into. This document also contained what were designated as legal arguments, with which we need not now concern ourselves. It also included allegations of breaches by Hull of the covenant not to compete, and wound up with a renewed claim that Hull's breaches of the contract had caused damage to the defendants and to Hull and Anderson, Inc.

The appellants complain that they had no advance notice of the plaintiffs' motion of May 6th. If they were in default, they were not entitled thereto under Rule 306 b of the Maryland Rules.

There was apparently no hearing on the merits of the present case, and the ground for the granting of the motion for judgment by default was the want of a plea. As to whether

or not they were so in default, we think that, in spite of its form, the letter which the appellants wrote to the Judge on February 12, 1957, did allege facts which would amount to a statement of a defense to the defendants' liability on the note —namely, a breach by one of the plaintiffs of a covenant in the agreement pursuant to which the note was executed and delivered, and that this letter should have been treated as a plea. It is, of course, true that no copy of it was served upon the plaintiffs, but this defect could have been taken care of by directing the defendants to serve a copy on the plaintiffs, and, upon compliance with that direction, the letter could properly have been filed with the Clerk as a plea. February 13th, when the Judge replied to this letter, was the last day for filing pleas within the fifteen day limit specified in the order of January 29th and the letter would seem to have been intended to operate as an extension of the time for pleading under Rule 645 f of the Maryland Rules. Somewhat parenthetically, we note that the plaintiffs' reply to the defendants' interrogatories in March suggests strongly that the plaintiffs did not then consider themselves as entitled to a judgment by default, though the fifteen days had long since passed.

If the letter of February 12th had been treated, as we think it should have been, as a plea, then judgment by default should not have been entered against the defendants, and the judgment will accordingly be reversed for further proceedings not inconsistent with this opinion.

The appellees filed a motion to dismiss the appeal for non-compliance by the appellants with our rules relating to appeals in that the appellants failed to furnish the appellees with a designation of the portions of the record which they proposed to print and omitted from the printed record certain items which were required to be printed. While we do not wish to condone failure to observe the rules, we do not think that the appellants' derelictions were so serious as to call for a dismissal of the appeal. Dismissal is not mandatory for these deficiencies. See Rule 835 b of the Maryland Rules.

In closing, we think it but fair to the trial Judge to state that he was far from indifferent to the protection of the right

of the defendants to have their day in court, and to note that, if they had followed his advice to obtain counsel, their case would have been presented and tried in orderly fashion. We are well aware of the complications which often flow from litigants undertaking to handle their own cases, but their right to do so has long been recognized in this State. *Henck v. Todhunter,* 7 Har. & J. 275. Because of our differing with the trial Judge as to how the letter of February 12, 1957, should have been treated, we reach the conclusion that the judgment should be reversed and the case remanded.

> *Judgment reversed and case remanded for further proceedings not inconsistent with this opinion; the appellees to pay the costs of this appeal.*