661 A.2d 726

**Maxine ANDERSON,**

v.

**Francis X. MEADOWCROFT.**

**No. 144, Sept. Term, 1994.**

Court of Appeals of Maryland.

July 19, 1995.

David P. Sutton, Baltimore, for petitioner.

Pamela A. Bresnahan (Steven R. Becker, Semmes, Bowen & Semmes, all on brief), Washington, DC, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

This case draws into question whether interference with an expected inheritance and fraud in the procurement of a will are viable causes of action in Maryland.

## I.

Paul Peter Meadowcroft died on November 18, 1987. Under his will, dated August 2, 1981, he left most of his estate to a cousin, Francis X. Meadowcroft (Francis), as the residuary legatee; he also named Francis as the personal representative.[1] The decedent was survived by three brothers, William, Robert and James Meadowcroft, who filed a caveat to the will. While they claimed that the will was a result of fraud perpetrated on the decedent by Francis, they dismissed their case on April 23, 1992.[2]

Maxine Anderson, filed the complaint in this case in the Circuit Court for Harford County, on October 26, 1993, considerably after the statute of limitations on caveat proceedings had run.[3] In the complaint, she claimed that under the

---

1. Francis was actually the contingent residuary legatee under the will. The primary legatee was the decedent's wife, who predeceased him. The contingent specific legatees were the decedent's nephews, Donald K. Manning and William F. Manning, to whom the decedent bequeathed $5,000 and $20,000, respectively.

2. The plaintiff in this case, Maxine Anderson, was not a party to the caveat proceeding.

3. The statute of limitations for caveat proceedings is contained in Maryland Code (1974, 1991 repl. vol.), § 5–207 of the Estates and Trusts Article. It states in part:

   "Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will, even if there be a subsequent judicial probate or appointment of a personal representative."

decedent's previous will, dated August 29, 1975, she would have received one third of the estate. She alleged that she was the decedent's daughter, and that she lived with the decedent in Baltimore for more than twenty years. She claimed that they maintained a close relationship even after she moved away to Georgia.

She maintained that in the late 1970's, the decedent's health began to deteriorate and "he fell under the influence of Francis X. Meadowcroft." She also alleged that Francis is an attorney practicing in Maryland, and that he learned of the decedent's "sizable estate," and used "his influence and position as an attorney ... to unduly influence, coerce, and persuade the decedent" to change his will, leaving virtually all of his assets to Francis and none to Anderson. Furthermore, Anderson asserted that Francis actually prepared the will that effected this change, and that "such preparation of a Will, wherein the attorney vests himself with the assets of the estate is prima facie invalid and places the burden of proof to show a lack of fraud and undue influence on the attorney who had taken unfair advantage of his fiduciary relationship with the decedent."

The complaint contained two counts—conversion and fraud—and sought damages of $450,000 under each count. Francis moved to dismiss and the court granted the motion as to both counts. It held that Anderson could not maintain a conversion action when the property involved was merely "an expectancy interest under the decedent's earlier will." The court also held that Anderson failed to state a cause of action for fraud because she did not allege that Francis made any misrepresentations to her. Further, the court held that to the extent there was a presumption of fraud in a transaction between an attorney and client, the presumption does not extend to third parties attempting to benefit from it in a case at law. Subsequently, Anderson obtained new counsel and appealed. While the case was pending before the Court of

---

Francis was appointed personal representative on December 4, 1987.

Special Appeals, she filed a petition for a writ of certiorari, which we granted.

Anderson's new attorney, apparently realizing the difficulties associated with the causes of action stated in the complaint, attempts to reframe the issues for appeal to be 1) whether the complaint states a cause of action for tortious interference with an expected inheritance, 2) whether the complaint states a cause of action for fraud in the procurement of a will, and 3) whether the complaint is sufficient to withstand dismissal despite the fact that it did not contain the legal theories that would support a right to recovery. Anderson argues that we should recognize the tort of interference with an expected inheritance and the equitable action for fraud in the procurement of a will and find the complaint sufficient based on its factual allegations, despite her failure to specifically articulate viable legal theories.

Francis argues that the appeal should be dismissed because these issues were not raised in the Circuit Court. He further argues that Maryland law does not recognize the causes of action advanced by Anderson and that we should not recognize them now. To do so, he argues, would subvert the legislative policy expressed in the Estates and Trusts Article favoring a speedy and final resolution of probate proceedings, as evidenced by the rather short time limitations contained in §§ 5–207, 5–304, and 5–402.

## II.

### A.

Section 774B of the *Restatement (Second) of Torts,* states: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Comment a explains that this is an extension of the tort of intentional interference with prospective contracts. Early cases refused to allow this extension, usually citing as a reason that there was "no sufficient degree of certainty that the

plaintiff ever would have received the anticipated benefits." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1006 (5th ed.1984). Now, however, many courts have permitted recovery on the basis of evidence of "a high degree of probability that the testator would have made or changed a bequest." *Id.* at 1007. Keeton states that in these cases "[t]he problem appears in reality to be one of satisfactory proof that the loss has been suffered, instead of the existence of a ground of tort liability." *Id.* Keeton further notes that all cases in which courts have permitted recovery "have involved conduct tortious in itself, such as fraud or defamation or conduct depriving a testator or other actor of the capacity to act, as where there is duress or undue influence." *Id.* at 1007–08.

Courts in other jurisdictions have recognized the tort of intentional interference with an expected inheritance. *DeWitt v. Duce,* 408 So.2d 216 (1981); *Frohwein v. Haesemeyer,* 264 N.W.2d 792 (Iowa 1978); *Cyr v. Cote,* 396 A.2d 1013 (Me. 1979); *Lewis v. Corbin,* 195 Mass. 520, 81 N.E. 248 (1907); *Hammons v. Eisert,* 745 S.W.2d 253 (Mo.App.1988); *Doughty v. Morris,* 117 N.M. 284, 871 P.2d 380 (N.M.Ct.App.1994); *Bohannon v. Wachovia Bank & Trust Co.* 210 N.C. 679, 188 S.E. 390 (1936); *Firestone v. Galbreath,* 67 Ohio St.3d 87, 616 N.E.2d 202 (1993); *King v. Acker,* 725 S.W.2d 750 (Tex.App. 1987); *Barone v. Barone,* 170 W.Va. 407, 294 S.E.2d 260 (1982). A substantial number of courts permit plaintiffs to maintain such actions only when they have exhausted probate proceedings or can show that such proceedings would not have provided adequate relief. *See Moore v. Graybeal,* 843 F.2d 706, 710 (3rd Cir.1988); *McGregor v. McGregor,* 101 F.Supp. 848 (D.Colo.1951), *aff'd,* 201 F.2d 528 (10th Cir.1953); *Benedict v. Smith,* 34 Conn.Sup. 63, 376 A.2d 774 (Conn.Super.Ct.1977); *DeWitt, supra; Robinson v. First State Bank of Monticello,* 97 Ill.2d 174, 73 Ill.Dec. 428, 434, 454 N.E.2d 288, 294 (1983); *Axe v. Wilson,* 150 Kan. 794, 96 P.2d 880, 888 (1940); *Allen v. Lovell's Adm'x,* 303 Ky. 238, 197 S.W.2d 424 (1946); *Brignati v. Medenwald,* 315 Mass. 636, 53 N.E.2d 673, 674 (1944).

We have adopted the tort of wrongful or malicious interference with economic relations. *Alexander v. Evander*, 336 Md. 635, 650, 650 A.2d 260 (1994); *Macklin v. Logan*, 334 Md. 287, 296–302, 639 A.2d 112 (1994). But we have not yet considered expanding the tort to apply to interference with gifts or bequests, nor, therefore, have we considered the compatibility of such an expansion with caveat proceedings. In the business context, where the tort does apply, we have required that the interference be "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander, supra,* 336 Md. at 657, 650 A.2d 260. We have said: "Wrongful or unlawful acts include common law torts and ' "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith," ' " *Id.* (quoting *K & K Management v. Lee,* 316 Md. 137, 166, 557 A.2d 965 (1989) (quoting Prosser, *Law of Torts,* § 130, 952–953 (4th ed.1971))).

### B.

What Anderson refers to as fraud in the procurement of a will is a cause of action based essentially on the same facts that would support a cause of action for intentional interference with an expected inheritance. Fraud in the procurement of a will, however, is an equitable cause of action that seeks the imposition of a constructive trust in favor of the rightful beneficiaries on the proceeds that have been fraudulently obtained by the defendant. *See Restatement of Restitution,* § 184 (1937) ("Where a disposition of property by will or an intestacy is procured by fraud, duress or undue influence, the person acquiring the property holds it upon a constructive trust, unless adequate relief can otherwise be given in a probate court."); *Keeton, supra,* § 130 at 1007 ("Courts of equity have granted relief by imposing a constructive trust [when there has been unlawful interference with an expected inheritance]."); *Barone, supra,* 294 S.E.2d at 263 ("[I]f by fraud a devisee had procured a will in his favor preventing an intended testamentary gift to someone else, equity will enforce

the intended testamentary disposition by impressing a trust in favor of the person defrauded, and treat the actual devisee as a constructive trustee holding title for the rightful beneficiary."); *Monach v. Koslowski*, 322 Mass. 466, 78 N.E.2d 4 (1948); *Latham v. Father Divine*, 299 N.Y. 22, 85 N.E.2d 168 (1949).

Anderson maintains that we recognized this cause of action in *Potts v. Emerick*, 293 Md. 495, 445 A.2d 695 (1982), and *Clark v. Callahan*, 105 Md. 600, 66 A. 618 (1907). In *Potts*, the decedent, Timbrook, added Potts's name to three bank accounts, "in a form sufficient to pass sole ownership of the funds to Potts on Timbrook's death." *Potts, supra*, 293 Md. at 497, 445 A.2d 695. In her will, Timbrook stated that she owned several accounts upon which she had placed Potts' name and desired that Potts pay her debts, expenses, and the bequests in the will out of these accounts. She specifically stated in the will that Potts understood this request and had agreed to it. The attorney who prepared the will corroborated this, testifying that Potts said she "fully understood [Timbrook's] intentions, that she would pay all of the bequests and the expenses and the gifts from the funds in the joint accounts." *Id.* at 498, 445 A.2d 695. After Timbrook's death, Potts withdrew all the funds and paid some of the expenses. Then after consulting an attorney, she refused to pay any more sums on behalf of the estate and filed a claim with the estate for the sums she had already paid. Emerick, as personal representative of the estate, filed suit seeking the imposition of a constructive trust, which the circuit court imposed. We affirmed, holding that principles of unjust enrichment and restitution warranted imposition of the trust as a means of enforcing Potts' promise to Timbrook.

In *Clark*, the decedent maintained benefit certificates with two fraternal orders payable upon his death. He sought to make the certificates payable equally to his daughter, Callahan, and his foster daughter, Clark, but he discovered that the fraternal orders would not allow him to designate Clark as a beneficiary because she was not a blood relative. He then obtained a promise from Callahan that she would pay half of

the benefits to Clark and made Callahan the sole beneficiary. After the decedent's death, Callahan refused to give Clark half of the proceeds. We stated:

> "Can she now, after securing to herself the fruits of these certificates by repeated assurances that she would carry out her father's directions to share the proceeds with [Clark] be permitted to repudiate her promises after his death, and thus defraud both the dead and the living? We think not.... Such conduct as Mrs. Callahan's, even assuming that the creation of the trust was subsequent to her substitution as beneficiary, constitutes fraud, and gives jurisdiction to equity to defeat its consummation. By assenting to her father's wishes and directions she led him to make no other disposition in favor of [Clark], and fastened upon her own conscience a trust or confidence which she cannot repudiate without fraud, and which a Court of Equity will enforce."

105 Md. at 617, 66 A. 618.

Neither of these cases directly supports the imposition of a constructive trust based on a claim of undue influence in the procurement of a will where the beneficiary made no promises to the decedent to use the proceeds for a particular purpose. In both cases, the promise made by the defendant to the decedent was the factor that motivated our imposition of a constructive trust. Moreover, in both *Potts* and *Clark,* the plaintiffs sought relief that was not available in caveat proceedings; the invalidation of the decedent's will would not have compensated the plaintiffs. Conversely, in the case before us, Anderson could have sought relief in a caveat proceeding to the will and, if successful, could have sought to probate the prior will under which she was a beneficiary.[4]

---

4. Courts in other jurisdictions have stated that they would impose constructive trusts, in such situations, only if caveat proceedings do not provide adequate relief. *See, e.g., Johnson v. Stevenson,* 269 N.C. 200, 152 S.E.2d 214, 217 (1967) ("This right of direct attack by *caveat* gave her a full and complete remedy at law. Hence, plaintiff, on the facts alleged, is not entitled to equitable relief."). *See also Restatement of Restitution,* § 184 (providing for imposition of constructive trust "un-

Accordingly, imposition of a constructive trust under the facts of this case would require a significant expansion of *Potts* and *Clark*.

## III.

In this case, however, we need not decide whether or how far to extend our law to embrace these causes of action because we hold that the complaint does not adequately allege undue influence, which forms the basis for both claims. In the complaint, Anderson contends that Francis's position as the decedent's attorney creates a presumption of fraud or undue influence in the procurement of the will. This is simply incorrect under Maryland law. While we recognize such a presumption when an attorney receives a gift *inter vivos,* we do not extend the presumption to bequests under a will. *Shearer v. Healy,* 247 Md. 11, 24–25, 230 A.2d 101 (1967). We have said:

> "[T]here is an obvious difference between a gift whereby the donor strips himself of the enjoyment of his property while living and a gift by will, which takes effect only from the death of the testator. In cases of gifts by will the fact that a party is largely benefited by a will prepared by himself is nothing more than a suspicious circumstance of more or less weight according to the facts of the case."

*Id.* at 25, 230 A.2d 101 (quoting *Cook v. Hollyday,* 185 Md. 656, 667, 45 A.2d 761 (1946)). One commentator has observed:

> "In a number of states it is said that the equity rule that a presumption or inference of undue influence arises where the party in whom trust and confidence is reposed . . . applies only to transactions inter vivos, and does not apply to gifts by will. . . . The reason which is frequently assigned for this rule is that the testator gives only property in which his interest is bound to cease at his death, while a

less adequate relief can otherwise be given in a probate court"). These authorities are analogous to those cited above that require plaintiffs to exhaust probate proceedings before filing a tort action for intentional interference with an expected inheritance.

gift inter vivos passes property which the donor would have retained but for the gift."

3 William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 29.84, at 600–01 (1961).

We have said that "undue influence which will avoid a will must be unlawful on account of the manner and motive of its exertion, and must be exerted to such a degree as to amount to force or coercion, so that free agency of the testator is destroyed." *Moore v. Smith,* 321 Md. 347, 353, 582 A.2d 1237 (1990) (quoting *Nalley v. Nalley,* 253 Md. 197, 202, 251 A.2d 849 (1969)). *See also Arbogast, Exec. v. MacMillan,* 221 Md. 516, 521, 158 A.2d 97 (1960); *Sellers v. Qualls,* 206 Md. 58, 70, 110 A.2d 73 (1954); *Stockslager v. Hartle,* 200 Md. 544, 547, 92 A.2d 363 (1952); *Koppal v. Soules,* 189 Md. 346, 351, 56 A.2d 48 (1947); *Woodruff v. Linthicum,* 158 Md. 603, 607–08, 149 A. 454 (1930); *White v. Snyder,* 124 Md. 395, 400–01, 92 A. 763 (1914). Long ago, we recognized that this test—for undue influence in procuring a gift by will—is very different from the one used for gifts *inter vivos. Griffith v. Diffenderffer,* 50 Md. 466, 484 (1879); *Tyson v. Tyson,* 37 Md. 567, 583 (1873). We observed:

> "In the cases of gifts or other transactions *inter vivos*, it is considered by courts of equity, that the natural influence which such relations as those in question involve, exerted by those who possess it, to obtain a benefit for themselves, is an undue influence. The law regarding wills is very different from this. The natural influence of the parent or guardian over the child, or the husband over the wife, or the attorney over the client, may lawfully be exerted to obtain a will or legacy, so long as the testator thoroughly understands what he is doing, and is a free agent."

*Griffith, supra,* 50 Md. at 484.[5] *See also Sellers, supra,* 206 Md. at 71–72, 110 A.2d 73 (quoting Griffith).

---

5. In *Griffith,* the son-in-law, agent and attorney-in-fact of the decedent employed his own attorney to draft the decedent's will. Furthermore, the decedent consulted the son-in-law in making the will, under which he and his wife were greatly benefited. We refused to allow a presump-

■ We have not created a bright-line test to detect the existence of undue influence, but we have identified the following elements that may be characteristic of it:

"1. The benefactor and beneficiary are involved in a relationship of confidence and trust;

2. The will contains substantial benefit to the beneficiary;

3. The beneficiary caused or assisted in effecting execution of will;

4. There was an opportunity to exert influence;

5. The will contains an unnatural disposition;

6. The bequests constitute a change from a former will; and

7. The testator was highly susceptible to the undue influence."

*Moore, supra,* 321 Md. at 353, 582 A.2d 1237.

■ Anderson has alleged a confidential relationship (attorney/client), a substantial benefit to Francis, involvement in the drafting of the will, an opportunity to exert influence, a change from a former will, and possibly an unnatural disposition.

The complaint fails, however, because Anderson did not allege facts sufficient to establish the decedent's high susceptibility to undue influence. In some cases we have concluded that the decedent was highly susceptible to influence because his or her mental state had deteriorated. Thus, in *Shearer, supra,* 247 Md. at 26, 230 A.2d 101, we distinguished *Mecutchen v. Gigous,* 150 Md. 79, 132 A. 425 (1926), in part by stating

---

tion of fraud, noting the differences between gifts *inter vivos* and gifts by will.

In *Cook, supra,* Cook was an attorney and the brother-in-law of the decedent. He prepared the decedent's will and in it recited the terms of an agreement granting himself an option to purchase certain property at a specified price. It was in this context that we cited the distinction made in *Griffith* between undue influence involving gifts *inter vivos* and undue influence involving gifts by will. Nevertheless, in *Cook,* we found the option to purchase the property to be, not a gift by will, but a confirmation of a previous oral agreement. Thus, the more stringent rules of undue influence applied.

that in *Mecutchen,* "[t]here was evidence that the testatrix had a weak mind when the will was executed...." In other cases, we have found the decedent to be highly susceptible to influence when he or she was highly dependent on the beneficiary to meet vital physical needs. For example, in *Moore, supra,* 321 Md. at 357–58, 582 A.2d 1237, the decedent was illiterate, partially paralyzed, partially blind, and reliant on the beneficiary to attend to his physical needs and financial affairs. We found that these circumstances created a high susceptibility to undue influence. Also, in *Shearer, supra,* 247 Md. at 26, 230 A.2d 101, we distinguished *Griffith v. Benzinger,* 144 Md. 575, 125 A. 512 (1924), by stating that "[i]n *Griffith,* the testator was 76 years of age, was 'almost helpless' because of a chronic and progressive ailment and depended heavily on his mistress, who was also his nurse." When such physical dependence exists along with the other characteristics of undue influence, we have found the combination to be sufficient for a fact-finder to infer that the decedent was motivated by force or fear.

In this case, however, Anderson did not allege any of these circumstances. She neither alleged that the decedent's mental abilities had deteriorated such that he would have been extraordinarily susceptible to his attorney's suggestions, nor that Francis used force or fear to coerce the decedent into changing the will, nor that the decedent was especially dependent on Francis to meet his physical needs. Indeed, Anderson did not even allege generally that Francis interfered with the decedent's exercise of free agency. Moreover, the mere presence of the word "coerce" in the complaint does not save it; such a conclusory allegation, without supporting facts, is insufficient to state a cause of action. *See* Maryland Rule 2–305 ("A pleading that sets forth a claim for relief ... shall contain a clear statement of the facts necessary to constitute a cause of action...."); *Shepter v. Johns Hopkins University,* 334 Md. 82, 103, 637 A.2d 1223 (1994) (holding that a counterclaim violated Rule 2–305 because the allegations were simply conclusory and not factual); *Nigido v. First Nat'l Bank,* 264 Md.

702, 708–11, 288 A.2d 127 (1972) (plaintiff must allege facts, not merely conclusions, to state a cause of action).

*JUDGMENT AFFIRMED, WITH COSTS.*