722 A.2d 441

**Ronald W. PARKER**

v.

**KOWALSKY & HIRSCHHORN, P.A.**

**No. 722, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 7, 1999.

Robert Reynolds, White Marsh, for appellant.

Glenn E. Bushel (Brocato, Price & Bushel, P.A., on the brief), Baltimore, for appellee.

Argued before DAVIS, HOLLANDER and MARVIN H. SMITH (retired, specially assigned), JJ.

DAVIS, Judge.

On November 10, 1994, appellant, Ronald W. Parker, filed a Complaint in the Circuit Court for Baltimore County against E. Pamela Waldron,[1] alleging conversion and breach of contract. Waldron, a former attorney in appellant's law firm, removed approximately seventy files from appellant's office when she terminated her employment. Subsequently, appellant filed a Petition for Accounting on January 30, 1995 against Waldron, who shortly thereafter obtained employment with appellee, Kowalsky & Hirschhorn, P.A. After a trial on November 18, 1996, the circuit court (Byrnes, J.) denied appellant's petition and appellant filed a Motion to Alter/Amend Judgment. On December 23, 1996, the court de-

---

1. At the time the complaint was filed, Ms. Waldron's name was E. Pamela McArthur.

nied the motion and appellant failed to appeal the circuit court's judgment.

On October 17, 1997, appellant filed an Amended Complaint attempting to add appellee as a party. In addition to the two counts against Waldron, the Amended Complaint listed a third count against appellee for conversion, alleging that appellee received fees from the cases Waldron took from appellant. Appellee filed a motion to strike the Amended Complaint and to deny appellant's accompanying Motion for Adding a New Party Defendant. Meanwhile, on December 24, 1997, appellant filed a single-count Complaint alleging conversion against only the appellee in the lower court. Appellant, however, neither served the Complaint on appellee nor informed appellee of the suit's existence. Appellee first learned of the second suit when the court held a hearing on February 12, 1998.

At the hearing, the court heard argument from both parties and denied appellant's attempt to add appellee as a new party to the original suit.[2] After learning, during the hearing, of the Complaint appellee filed on December 24, 1997, appellee made an oral motion to dismiss. The lower court granted the motion, noting that, if appellant desired, he could send the Complaint to appellee, and appellee formally could file a written motion to dismiss so that the record would be clear for purposes of a potential appeal.

Pursuant to the court's suggestion, appellant mailed the Complaint to appellee, who filed a Motion to Dismiss on March 5, 1998. Appellant did not respond, and the court granted appellee's Motion to Dismiss without leave to amend in an order dated March 18, 1998. After appellant timely filed this appeal on April 10, 1998, appellee filed a motion to dismiss the appeal on August 27, 1998, which this Court denied. Currently, appellant presents for review one question that we restate as follows:

---

**2.** At this hearing, the court also denied Waldron's summary judgment motion. Appellant's case against Waldron, therefore, was set for a September 9, 1998 trial date.

Did the lower court err by finding no cause of action in conversion and granting appellee's motion to dismiss when appellant's former employee, who had taken seventy files from appellant without permission, was hired by appellee and appellee subsequently retained a portion of the fees received from work completed on those files?

Before responding to appellant's question, we point out that appellee's brief also includes a renewal of the earlier motion to dismiss the appeal based on appellant's alleged failure both to preserve issues for appeal and to comply with MD. RULE 8–602(a)(8) concerning the record extract. Also, along with a question addressing the issue presented by appellant, appellee presents three additional questions for our review. We restate and restructure appellee's questions as follows:

I. Did appellant, who failed to file an opposition to appellant's motion to dismiss, waive arguments on appeal regarding the grant of that motion?

II. Because the lower court denied appellant's attempt to add appellee as a defendant in a suit against appellee's employee, does issue preclusion bar a subsequent action, which is based on the same grounds, by appellant against appellee?

III. Was appellant's suit against appellee barred because of the statute of limitations?

We deny appellee's motion to dismiss and incorporate our analysis of appellee's first question presented into that discussion. We further answer appellant's first question, as well as the second and third questions presented by appellee, in the negative. Consequently, we shall affirm the lower court's judgment.

## FACTS

In November of 1992, appellant hired E. Pamela Waldron, then E. Pamela McArthur, as an attorney in his law office, Parker & Pallett. Waldron was a salaried employee for appellant until February 1994, when the two negotiated for Waldron to become an independent contractor working on

commission. Under this agreement, appellant provided Waldron with files on which to work. Waldron kept forty percent of any fees obtained from those files while appellant's firm received sixty percent. During the four months after the agreement, Waldron generated fees that earned her over $19,000. In June 1994, however, Waldron removed approximately seventy client files that belonged to the law firm and discontinued working for appellant without providing notice to appellant or the clients. Appellant and Waldron subsequently met regarding possession and control of the client files on June 22, 1994, but were unsuccessful in reaching either an amicable settlement of the dispute or a distribution of the legal fees.

On November 10, 1994, appellant filed a Complaint against Waldron in the Circuit Court for Baltimore County alleging breach of contract and conversion. In addition, appellant filed a Petition for Accounting on January 30, 1995. Meanwhile, Waldron briefly was employed by another attorney, Daniel Earnshaw, before beginning to work for appellee early in 1995. On May 2, 1995, appellant sent a letter to appellee informing appellee of the law suit he filed against Waldron and requesting use of appellee's office to take Waldron's deposition. Although appellant never reached an agreement with Waldron after her departure, the letter stated that she "had agreed through her attorney ... to split proceeds from the files which she had taken. She is attempting to renege upon this agreement."

During a hearing on November 18, 1996, the lower court denied appellant's Petition for Accounting. The court stated:

I mean, the only conclusion one could come to as a result of all this is that that meeting of June the 22nd, 1994, did not produce an agreement between the parties.

Now, I find that as a fact. I suppose that is all that is in front of me.

. . .

There is no claim here for breach of contract, therefore, I do not reach that particular issue at this time.

Subsequently, appellant filed a Motion to Alter/Amend Judgment that was denied during a lower court hearing on December 23, 1996. Appellant did not appeal either of the court's rulings.

Meanwhile, discovery continued in appellant's case against Waldron and appellant learned, through an August 1997 discovery response, that a portion of the fees generated from the case files at issue were paid to appellee. Consequently, appellant filed an Amended Complaint on October 17, 1997, that added a count alleging conversion on the part of appellee to the two counts of breach of contract and conversion against Waldron. On November 24, 1997, appellee moved to strike the additional count and requested that the lower court deny appellant's motion to add a new defendant.

The court held a hearing on February 12, 1998, at which time the court denied Waldron's motion for summary judgment and addressed appellant's Amended Complaint:

> The complaint, if permitted to be amended, would say that the demand was made to [appellee] to return the monies; they didn't, and, therefore, they have, it is alleged, converted the money to their own use after legal lawful demand to return it. Well, I don't see this as a conversion case.
>
> The dispute really is between [appellant] and Waldron, and it may be that she owes money and maybe she doesn't. But it's really, in my judgment, a dispute of fact over a contract, and I don't believe that [appellee] should be in this case.

The judge, therefore, refused to allow appellant to add appellee as a defendant because there was no basis for the conversion claim against appellee.

Despite refusing appellant's attempt to add appellee as a defendant, a new matter arose during the hearing. On December 24, 1997, appellant filed a single-count Complaint against only the appellee in the lower court. The Complaint

contained language that was nearly verbatim as that found in the conversion count against appellee from the Amended Complaint in the initial suit. Appellant, however, did not serve the complaint upon appellee, who learned of the action for the first time during the hearing. The following exchange occurred:

> THE COURT: So I'm going to deny the motion to add a new party ... and because case number C–97–12203, [appellee's counsel], is [appellant] v. [appellee], you are now making an oral motion to dismiss that.
>
> [APPELLEE'S COUNSEL]: You took the words right out of my mouth, your Honor.
>
> THE COURT: That motion is granted.

The court, however, gave appellant the option of mailing appellee the Complaint so that appellee could file a formal motion to dismiss and the record would be clear for appellate purposes. Appellant mailed the Complaint, and appellee filed a Motion to Dismiss on March 5, 1998, but appellant filed no response. In an order dated March 18, 1998, the court granted appellee's motion and appellant timely noted this appeal on April 10, 1998. Appellee's August 27, 1998 motion to dismiss the appeal was denied by this Court.

## DISCUSSION

Before discussing the questions presented by the parties, we shall address appellee's motion to dismiss the appeal. Appellee first argues that the appeal should be dismissed because appellant failed to comply with MD. RULE 8–501. According to the Rule, "within 15 days after the filing of the record in the appellate court, the appellant shall serve on the appellee a statement of those parts of the record that the appellant proposes to include in the record extract." MD. RULE 8–501(d)(1) (1998).

The record in this case was filed in this Court on July 13, 1998. Appellant, however, neither served a statement on appellee nor met the fifteen-day requirement. Instead, appellant telephoned appellee on August 17, 1998, over a month

after the record was filed, to inquire as to what portion of the record appellee wished to include in the record extract. Pursuant to appellee's request, appellant faxed appellee a written designation that afternoon. The next day, appellee objected to appellant's inclusion of materials not found in the record. Maryland Rule 8–501(c) states that "[t]he record extract shall contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal. . . ." MD. RULE 8–501(c)(1988). Despite appellee's objection and the contents of the Rule, appellant filed a record extract containing transcripts and discovery materials not found in the record.[3]

The Court of Appeals held that "it is within the discretion of [the appellate courts] whether to dismiss an appeal or not." *Wilhelm v. Burke,* 235 Md. 412, 417, 201 A.2d 835 (1964). In *Anderson v. Hull,* 215 Md. 476, 138 A.2d 875 (1958), the appellees filed a motion to dismiss the appeal because the appellant failed to supply appellee with a designation of the proposed record extract and omitted certain required items. We commented that, "[w]hile we do not wish to condone failure to observe the rules, we do not think that the appellants' derelictions were so serious as to call for a dismissal of the appeal." *Anderson,* 215 Md. at 482, 138 A.2d 875. Likewise, in the instant case, appellant's failure to meet the required time constraints and his inclusion of irrelevant material do not convince us that we should exercise our discretion to dismiss appellant's appeal. Instead, we shall follow the course taken in *Hosain v. Malik,* 108 Md.App. 284, 294, 671 A.2d 988 (1996), and simply "not consider those extraneous materials."

Appellee also contends that appellant failed to meet the format requirements for a brief from Rules 8–112(c) and

---

**3.** These portions of the extract consist of the following material from appellant's case against Waldron: a May 2, 1995 letter from appellant to appellee, a short excerpt from Waldron's October 21, 1996 deposition, and transcripts of the November 18 and December 23, 1996 hearings from the case against Waldron.

8–504(a)(8) both by utilizing proportionally spaced type smaller than thirteen point and by omitting the certification warranting compliance with such guidelines.[4] In *Ebert v. Ritchey,* 54 Md.App. 388, 458 A.2d 891 (1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 356 (1984), the appellee moved to dismiss the appeal, alleging that the appellant's brief did not conform to the applicable Maryland Rules regarding style and content. Although we agreed that appellant did not strictly conform to the rules, we decided to "exercise our discretion and deny the motion because we do not view the violations as substantial." *Id.* at 393, 458 A.2d 891.[5] Again, while we do not condone appellant's disregard for the Rules in the case *sub judice,* our conclusion is the same as in *Ebert* that appellant's errors do not warrant dismissal.

 Appellee's final argument concerning dismissal is that appellant did not preserve any issues for appeal because of his failure to file a response to the March 5, 1998 Motion to Dismiss.[6] Initially, when a defendant fails to file a response to a motion to dismiss, the trial court nevertheless may not grant the motion unless the complaint fails to state a cause of action. The scope of appellate review in this Court is delimited as follows:

> Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

---

**4.** We find this second contention unconvincing considering that appellee also failed to include the required certification.

**5.** *Cf. Mayor and City Council v. Bowen,* 54 Md.App. 375, 381 n. 3, 458 A.2d 1242 (1983) (warning that a single-spaced brief with improper margins could be grounds for dismissal).

**6.** This argument is identical to that posed in appellee's first question presented. Therefore, we shall answer this question in the negative based upon the discussion below.

MD. RULE 8–131(a) (1998). The primary purpose of this Rule is "to ensure fairness for all parties in a case and to promote the orderly administration of law." *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107 (1994) (quoting *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28 (1969)). Fairness is furthered by "requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings." *Id.* at 189, 638 A.2d 107 (quoting *Clayman v. Prince George's County,* 266 Md. 409, 416, 292 A.2d 689 (1972)).

In the instant case, the interest of fairness is promoted by our conclusion that appellant preserved the issue of whether the lower court erred by dismissing the Complaint. During the February 12, 1998 hearing, appellant's counsel brought his client's position to the attention of the court, allowing the judge to decide whether appellant stated a claim in conversion for which relief could be granted. Additionally, the court ruled in advance on appellee's March 5, 1998 Motion to Dismiss by relating to the parties that appellee's filing of the motion was only a procedural matter to clear the record for a potential appeal. The following exchange occurred:

THE COURT: So I'm going to deny the motion to add a new party ... and because case number C–97–12203, [appellee's counsel], is [appellant] v. [appellee], you are now making an oral motion to dismiss that.

[APPELLEE'S COUNSEL]: You took the words right out of my mouth, your Honor.

THE COURT: That motion is granted.

. . .

THE COURT: In [the case *sub judice* ] what I've suggested is that [appellant's counsel] mail to [appellee's counsel] a copy of the complaint. He will file a motion to dismiss; I'll grant the motion for the reasons stated in open court here today, and if you want to take an appeal, just take an appeal. But that way it will be clean. So that's what we'll do.

> You'll send him a copy of it; he'll file a motion to dismiss, and I'll send an order out granting it. And from that the appeal can run if you want to do it. I believe you have 30 days; you even have more than that, but you can start thinking about it now.

Under these circumstances, appellant may not have believed that filing a response would alter the lower court's decision to grant appellee's Motion to Dismiss. Such a belief was accurate considering that the court granted appellee's motion prior to the expiration of the fifteen days allowed for the filing of a response under MD. RULE 2–311(b).[7] Consequently, we deny appellee's motion to dismiss the appeal.

## I

Appellant's lone argument is that the lower court erred by finding no cause of action in conversion and granting appellee's motion to dismiss. Initially, we shall set out the standard for appellate review of a trial court's grant of a motion to dismiss. It is clear that "the reviewing appellate court shall assume to be true not only all of the well[-]pleaded facts in the complaint but also 'the inferences which may be reasonably drawn from those well[-]pleaded facts.'" *Simms v. Constantine*, 113 Md.App. 291, 295, 688 A.2d 1 (1997) (quoting *Stone v. Chicago Title Ins. Co.*, 330 Md. 329, 333–34, 624 A.2d 496 (1993)). An appellate court also must consider well-pleaded facts and allegations in the light most favorable to the appellant. *Id.* at 296, 688 A.2d 1 (quoting *Berman v. Karvounis*, 308 Md. 259, 264, 518 A.2d 726 (1987)). Finally, "[d]ismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Id.* (quoting *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993)). Accordingly, we shall review the court's decision to grant appellee's motion based on the failure to state a cause of action in conversion for which relief could be granted.

---

7. Appellee filed the Motion to Dismiss on March 5, 1998 and the court granted the motion through an order dated March 18, 1998.

In *Baltimore & Ohio R.R. Co. v. Equitable Bank, N.A.*, 77 Md.App. 320, 325, 550 A.2d 407 (1988), this Court outlined the following elements of a conversion claim:

> Conversion has been defined as a distinct act of ownership or dominion exerted by a person over the personal property of another which either denies the other's rights or is inconsistent with it. "The gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." Accordingly, a conversion occurs at such time as a person is deprived of property which he is entitled to possess.

(Quoting *Staub v. Staub*, 37 Md.App. 141, 142–43, 376 A.2d 1129 (1977)). For purposes of this appeal, the relevant issue regarding conversion concerns possession of the property and the requirement that appellant must "have been in actual possession or have had the right to immediate possession in the converted asset." *Id.* at 327, 550 A.2d 407. Accordingly, we must examine the complaint in a light most favorable to appellant and determine whether appellant had a possessory interest in the client fees that Waldron paid to appellee.

The Complaint alleged that appellee "has received and accepted economic benefits resulting from payments of insurers and/or defendants in the files or law cases for persons who were the clients of [appellant]." While we agree with the lower court's conclusion that appellant stated a viable cause of action in conversion against Waldron, we do not believe that this allegation demonstrates that appellant had a possessory interest in the fees that were received by appellee. The only "actual possession" or "right to immediate possession" to which appellant is entitled involves the files themselves and that determination is based on Waldron's right, *vel non*, to remove them from the office.

Appellant cites no case law, and we discovered none, supporting his allegations that appellee illegally converted the client files and legal fees. In support of our conclusion, we look to *Skeens v. Miller*, 331 Md. 331, 628 A.2d 185 (1993), in

which the Court of Appeals discussed the recovery of fees by an attorney who was retained on a contingency fee basis, but subsequently was discharged without cause. The Court stated that "[i]t is well settled that the authority of an attorney to act for a client is revocable at the will of the client." *Skeens*, 331 Md. at 335, 628 A.2d 185 (citations omitted). Additionally, "if the representation is terminated either by the client without cause or by the attorney with justification, the attorney is entitled to be compensated for the reasonable value of the legal services rendered prior to termination." *Id.* at 336, 628 A.2d 185 (citing *Attorney Grievance Comm'n v. Korotki*, 318 Md. 646, 670, 569 A.2d 1224 (1990)). Consequently, a recovery against appellant's clients based on *quantum merit* may have been available to appellant. *See Somuah v. Flachs*, 352 Md. 241 (1998). Given the revocable nature of the attorney-client relationship, however, we disagree with appellant's argument that he retained a possessory interest in the legal fees.

■ When an attorney changes law firms, certain clients may decide to continue representation by the attorney, rather than the previous law firm. Therefore, the attorney's new law firm is not liable to the old law firm in conversion for subsequent fees because the client has the option of choosing representation. This conclusion does not presume that Waldron would not be liable to appellant on either a breach of contract or conversion claim. Given both the speculative nature of fees that were recovered a year after Waldron left appellant's firm and the clients' freedom to choose with whom to maintain representation, appellant has not demonstrated, even in a light most favorable to him, actual possession of the fees transferred to appellee's escrow account.

Further support is found by analogizing the instant case to *Anderson v. Meadowcroft*, 339 Md. 218, 661 A.2d 726 (1995). In *Anderson*, the daughter of a testator sued an attorney—who both drafted the will and received a bequest under the will—for conversion based on undue influence. The Court of Appeals affirmed the lower court's dismissal of the complaint

and reasoned, *inter alia,* that "[plaintiff] could not maintain a conversion action when the property involved was merely 'an expectancy interest under the decedent's earlier will.'" *Id.* at 221, 661 A.2d 726. Appellant's interest in the fees in the instant case also may be viewed as an expectancy interest because appellee removed the files before any actual possession of the fees was possible.

■ Based on our conclusion that appellant did not have a possessory interest in the fees at the time that the client files were removed by Waldron, appellant failed to state a cause of action against appellee for conversion. Even in the light most favorable to appellant, any alleged wrongful deprivation of property occurred in the removal of the files themselves, not in a subsequent generation of attorney's fees that was, at that time, at most, a speculative interest of appellant. The files comprise the property to which appellant may have been entitled, and any agreement between appellant and Waldron would be determinative of the ownership of such files.

## II

Although we affirm the lower court's judgment based upon the discussion above, we shall briefly discuss the remaining two questions presented by appellee. First, appellee argues that issue preclusion bars the action by appellant against appellee because appellant lost the previous action, which was based on the same grounds against Waldron. Appellee's contention is that the lower court's dismissal of appellant's Amended Complaint bars appellant from bringing a separate suit against appellee with the same allegations from the Amended Complaint. This was a unique factual scenario because the court essentially ruled simultaneously on both the Amended Complaint and appellant's Complaint against appellee. There was no prior proceeding in which the conversion claim had been already litigated and, therefore, claim preclusion does not apply.

## III

Finally, appellee contends that appellant's suit should be barred because of the statute of limitations. Appellee contends that the suit must fail because the complaint was filed in December 1997, more than three years after the June 1994 date on which Waldron stopped working at appellant's firm. Although appellant's claim against Waldron began to accrue in June 1994, it did not begin to accrue against appellee. Waldron did not procure employment in appellee's firm until early in 1995. Therefore, the statute of limitations could not have begun to run until Waldron began her employment with appellee in 1995. Consequently, appellant was not barred by the statute of limitations from filing the claim in December 1997.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**